UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONIET MOLINA ARZOLA, | CASE NO. 2:26-cv-00717-DGE |
| Petitioner, | |
| v. | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |
| FACILITY ADMINISTRATOR et al.,[1] | |
| Respondents. | |

---

[1] Petitioner names the "Facility Administrator, Northwest ICE Processing Center (NWIPC)" as a respondent in this matter and identifies that he is detained at the NWIPC. (Dkt. No. 1 at 4, 6.) The proper respondent for § 2241 habeas petitions is "the person who has custody over [the petitioner]," not merely the agency employing that individual. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–435 (2004) (citing 28 U.S.C. §§ 2242, 2243); *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) (reversing grant of federal habeas relief where the immigrant detainee's direct custodian was not named as a respondent). Liberally construing the petition in Petitioner's favor, the Court finds Petitioner has adequately identified the person who has custody over Petitioner, in this case the Facility Administrator of the NWIPC who is otherwise known as Warden Bruce Scott. Accordingly, the Court substitutes Warden Bruce Scott as Respondent in this matter. The Court further notes Respondents filed a response to the petition and did not raise the absence of Scott's name on the petition as a basis for denial of the petition.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 1

This matter comes before the Court on Petitioner Doniet Molina Arzola's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, the return memorandum (Dkt. No. 10), and all supporting materials,[2] the Court GRANTS Petitioner's writ of habeas corpus.

## I    BACKGROUND

### A.  Factual Background[3]

Petitioner is a native and citizen of Cuba.  (Dkt. Nos. 1 at 6; 11 at 2.)  On June 26, 2024, he presented at the Paso Del Norte Port of Entry and "was paroled in[to the United States] for two years."  (Dkt. No. 11 at 2.)  That same day the Department of Homeland Security ("DHS") issued and served on Petitioner a Notice to Appear ("NTA").  (Dkt. No. 1-1.)  This NTA initiated removal proceedings (hereinafter, "Removal Proceedings 1") pursuant to section 240 of the Immigration and Nationality Act ("INA").  (*Id*. at 11.)  INA Section 240 is codified at 8 U.S.C. §1229a.  The NTA confirmed Petitioner had been "paroled into the United States pursuant to section 212(d)(5)" of the INA.  (*Id*.)  INA Section 212 is codified at 8 U.S.C. § 1182.  (*Id*.)  The NTA charged Petitioner as an arriving alien and removable from the United States pursuant to INA § 212(a)(7)(A)(i)(I).  (*Id*. at 11, 14.)  It also scheduled Petitioner for a hearing on September 4, 2024 at the Seattle Immigration Court.  (*Id*. at 11.)

Petitioner appeared before the Seattle Immigration Court on September 4, 2024 and was ordered to appear again on June 4, 2025.  (*Id*. at 6–7.)  On December 11, 2024, before his next

---

[2] On April 13, 2026, Petitioner, through a family member, informed the clerk's office that Petitioner had mailed in a motion for extension of time to file his traverse.  The motion for extension of time was entered on the docket on April 16.  (*See* Dkt. No. 12.)  The Court DENIES the motion for extension of time as moot because it believes the record as it stands is sufficient to grant Petitioner's writ of habeas corpus and to order Petitioner's release.

[3] Petitioner provided a small handful of documents in support of his habeas petition.  (*See* Dkt. No. 1-1 at 3–16.)  Respondents provided the declaration of Christopher Hubbard, a Deportation Officer (*see* Dkt. No. 11), but no other documentation to support their return memorandum.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 2

hearing, Petitioner filed an application for asylum and withholding of removal with the Seattle Immigration Court.[4]  (Dkt. No. 11 at 3.)

On June 4, 2025, Petitioner appeared at a master calendar hearing before the Seattle Immigration Court.  (*Id*. at 2.)  At that hearing, an immigration judge granted DHS's motion "to dismiss the [removal] proceedings for changed circumstances."  (*Id*.)  Put another way, the immigration judge terminated Removal Proceedings 1.  On June 26, 2024, Petitioner appealed the dismissal to the Board of Immigration Appeals ("BIA").  (*Id*. at 3.)  That appeal remains pending, and as a result, the June 4, 2025 dismissal order "is not a final order yet."  (*Id*. at 3, 4.)

Immediately following the June 4, 2025 hearing, however, Enforcement and Removal Operations ("ERO"), a division of Immigration and Customs Enforcement ("ICE"), arrested Petitioner, transferred him to the Northwest ICE Processing Center ("NWIPC"), and then processed him for expedited removal pursuant to 8 U.S.C. § 1225.  (*Id*. at 2–3.)  On June 13, 2025, Petitioner claimed fear of removal to Cuba and was thereafter referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear interview.  (*Id*. at 3.)  USCIS made a negative credible fear determination on July 17, 2025 and that decision was appealed to an immigration judge, who in turn vacated that decision on July 23, 2025.  (*Id*.)  On July 24, 2025, DHS issued a new NTA, again charging Petitioner as removable pursuant to INA § 212(a)(7)(A)(i)(I).  (*Id*.)  The July 24, 2025 NTA initiated new removal proceedings before an immigration court (hereinafter, "Removal Proceedings 2").  (*Id*.)

---

[4] Deportation Officer Christopher Hubbard identifies the application was filed with the Seattle Executive Office for Immigration Review, which is another name for the Seattle Immigration Court.  *See* U.S. DEP'T OF JUST., EXEC. OFF. FOR IMMIGR. REV., https://www.justice.gov/eoir/seattle-immigration-court.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 3

Petitioner again filed an application for asylum and withholding of removal with the immigration court on September 29, 2025. (*Id*. at 4.) On the same day, Petitioner also filed an application to adjust status based on the Cuban Adjustment Act. (Dkt. No. 1-1 at 16.) Subsequently, Petitioner twice attempted to terminate Removal Proceedings 2, but his requests were denied. (Dkt. No. 11 at 3–4.) However, the immigration court on its own terminated Removal Proceedings 2 on October 22, 2025, concluding that it lacked jurisdiction because the BIA continued to review the order terminating Removal Proceedings 1. (*Id*. at 4.)

At present, Petitioner remains detained at the NWIPC.

**B. Procedural History**

Petitioner filed his petition for writ of habeas corpus on March 3, 2026, by and through his next friend Fidel Molina Gonzalez. (Dkt. No. 1 at 15.) Gonzalez explained that because Petitioner is detained at the NWIPC, he has "limited ability to freely prepare, file, and litigate this habeas action on his own"; therefore, Gonzalez states "next-friend filing is necessary to secure prompt judicial review of the legality of Petitioner's detention." (*Id.*)

The Court issued an order to show cause on March 4, 2026, because even assuming Gonzalez qualified for "next friend" status under applicable case law, he was not permitted to prosecute the habeas petition pro se on Petitioner's behalf. (Dkt. No. 5 at 3.) The Court ordered either: (1) Petitioner must notify the Court that Gonzalez filed the habeas petition with Petitioner's knowledge and permission; declare under penalty of perjury that the contents of the petition were true and correct; and inform the Court Petitioner would proceed on his own behalf in the future or (2) Gonzalez must secure licensed counsel and counsel must make an appearance in this matter. (*Id.*) On March 20, 2026, Petitioner submitted his declaration attesting that the contents of the habeas petition were true and correct and confirmed that he would appear on his

own behalf in this matter.  (Dkt. No. 6 at 1.)  The Court was satisfied with Petitioner's response (*see* Dkt. No. 7) and issued the standard scheduling order.  (Dkt. No. 8.)

Petitioner argues he has been in custody since June 4, 2025.  (Dkt. No. 1 at 17.)  He alleges his detention has been prolonged and that continued detention violates the Due Process Clause of the Fifth Amendment.  (*Id.*)  He further asserts his pending adjustment of status form is relevant because his detention interferes with his ability to pursue relief.  (*Id.*)  He requests that Respondents justify his continued detention and, if they fail to establish a lawful basis for continued custody, that the Court order his release.  (*Id.*)

In response, Respondents argue Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b), "which mandates detention during the pendency of removal proceedings."  (Dkt. No. 10 at 8.)  Further, Respondents argue that even in applying the multi-factor test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–1118 (W.D. Wash. 2019), the circumstances "do not support a finding that Petitioner's detention has crossed the constitutional line."  (*Id.* at 9.)  Respondents posit that if the Court is inclined to grant relief of some kind, it should limit that relief to a bond hearing in front of the immigration court.  (*Id.* at 10.)

## II      LEGAL STANDARD

### A.  Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).

Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B.  Parole Under 8 U.S.C. § 1182

Noncitizens detained under 8 U.S.C. § 1225(b)(1) at the time of entry into the United States may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3.  "Such parole, however, 'shall not be regarded as an admission of the [non-citizen].' 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, 'the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); *see also In re Castillo-Padilla*, 25 I. & N. Dec. 257, 259 (BIA 2010) ("After the purpose of the parole has been served, the [non-citizen] returns to custody, and his or her case is dealt with in the same manner as any other applicant for admission.").

Parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A).  The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).  In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 6

Parole may be terminated either automatically or with notice.  *See* 8 C.F.R. § 212.5(e). Parole is automatically terminated without written notice "at the expiration of the time for which parole was authorized" and the noncitizen "shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."  8 C.F.R. § 212.5(e)(1)(ii). Paragraph (e)(2) states in part that the noncitizen "shall be restored to the status that he or she had at the time of parole."  *Id.* § 212.5(e)(2)(i).  To revoke parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen.  *Id.* (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]").

### III    DISCUSSION

**A. Petitioner is not currently subject to expedited removal proceedings pursuant to 8 U.S.C. § 1225.**

Respondents sought to "initiate" expedited removal proceedings pursuant to 8 U.S.C. § 1225 after obtaining the June 4, 2025 order terminating Removal Proceedings 1 for "changed circumstances."[5]  (Dkt. No. 11 at 3.)  Respondents do not explain what those changed

---

[5] This particular scheme—i.e., moving to terminate § 1229a removal proceedings of a non-detained individual as a means of initiating expedited removal proceedings and subjecting the non-detained individual to mandatory detention—raises serious due process concerns.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 7

circumstances were.  In any case, the June 2025 expedited removal proceedings were improper from the start; as the immigration court in Removal Proceedings 2 concluded, the termination of Removal Proceedings 1 was never final and otherwise remained pending review before the BIA. (*Id*. at 4.)  Accordingly, the Court concludes the unauthorized expedited removal proceedings were terminated when the immigration judge terminated Removal Proceedings 2.

Returning to Removal Proceedings 1, these proceedings were initiated pursuant to 8 U.S.C. § 1229a on June 26, 2024, the same day Petitioner was paroled into the United States for two years.  (Dkt. No. 1-1 at 11.)  The limited record indicates DHS chose not to initiate expedited removal proceedings on June 26, 2024, as Petitioner was not detained and not referred to USCIS for a credible fear interview at that time.  *See* 8 U.S.C. § 1225(b) (describing procedure for expedited removal).  Thus, at present, Removal Proceedings 1 remain pending, and Petitioner is not subject to the expedited removal procedures found in § 1225(b).

**B.  Additionally, Respondents did not comply with 8 U.S.C. § 1182(d)(5)(A) / 8 C.F.R. § 212.5(e)(2)(i); therefore, Petitioner's parole was never revoked or terminated.**

Absent from the record is any evidence Respondents complied with 8 U.S.C. § 1182(d)(5)(A) or 8 C.F.R. § 212.5(e)(2)(i) at the time they detained Petitioner in June 2025. There is no evidence Respondents provided Petitioner written notice of the revocation of his parole.  Nor is there evidence that an authorized official determined the purposes for which parole was authorized had been served, 8 U.S.C. § 1182(d)(5)(A), or that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States," 8 C.F.R. § 212.5(e)(2)(i).  Because Respondents failed to comply with 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i), Petitioner's parole was never revoked and his detention on June 4, 2025 was unlawful.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 8

**C. Petitioner's detention violates Due Process.**

Having determined Petitioner remains subject to Removal Proceedings 1 and that Petitioner's parole was not lawfully revoked, the Court now turns to Petitioner's Due Process claim.

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 9

### 1. Private Interest

Even individuals such as Petitioner who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482.

Here, Petitioner gained a protected liberty interest once he was "paroled in[to the United States] for two years." (Dkt. No. 11 at 2.) Under *Morrissey*, "this release [on parole] implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release." *Jose V.-R. v. Warden of the Cal. City Detention Facility*, Case No. 2:26-cv-00760-TLN-AC, 2026 WL 901421, at *2 (E.D. Cal. Apr. 2, 2026). And as discussed, Petitioner remains subject to Removal Proceedings 1, despite Respondents' position to the contrary. *See* Section III(A) *supra*. Petitioner has a clear interest in his continued freedom, per the terms of his parole, while Removal Proceedings 1 are pending before the BIA. (Dkt. No. 11 at 3 ("As of the date of this declaration, the appeal is still pending [at] the BIA."), 4 (Removal Proceedings 2 were dismissed in October 2025 "because jurisdiction is still with the

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 10

BIA.")); *see also Jose V.-R.*, 2026 WL 901421, at *2 ("Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings.").

Indeed, such parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home and "be with family and friends and to form the other enduring attachments of normal life." *Morrisey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," the revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and the parolee possesses a protected interest in his "continued liberty." *Id.* at 481–484 (citation modified). This Court "joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres v. Hermosillo*, Case No. 2:25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases).

Respondents' assertion that Petitioner is detained under § 1225(b) (*see* Dkt. No. 11 at 2) paints an incomplete picture of the circumstances and does not negate Petitioner's liberty interest. Petitioner's private interest in his continued liberty while on parole means the first *Mathews* factor weighs in his favor.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 11

As already identified, Sections III(A) and (B) *supra*, Respondents never properly initiated expedited removal proceedings and never lawfully revoked Petitioner's parole.  Petitioner was unlawfully detained, and therefore the risk of erroneous deprivation in fact materialized in this case.

To illustrate: rather than provide appropriate notice, Respondents engaged in what is, in effect, an end-run around the parole (and procedural protections) granted to Petitioner in June 2024.  When Removal Proceedings 1 were initiated in June 2024, Petitioner was released on parole with the implicit promise "that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release."  (Dkt. Nos. 1-1 at 11; 11 at 2.); *Jose V.-R.*, 2026 WL 901421, at *2.  Also implicit was the assumption that a DHS official either decided there were "urgent humanitarian reasons" or a "significant public benefit" in paroling Petitioner, and that Petitioner did not pose a security or flight risk.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).  However, when Petitioner showed up for a master calendar hearing on June 4, 2025, Respondents obtained an order dismissing Removal Proceedings 1, detained Petitioner, and then sought to place him in expedited removal proceedings under § 1225.  (Dkt. No. 11 at 2–3.)  After an immigration judge reversed USCIS's non-credible fear determination, DHS initiated Removal Proceedings 2 on July 24, 2025.  (*Id.* at 3.)  In Removal Proceedings 2, Petitioner was charged as removable under INA § 212(a)(7)(A)(i)(I), just like in Removal Proceedings 1—except this time, DHS sought to subject him to mandatory detention under § 1225(b).  (*Id.*) (Petitioner is "being detained per INA § 235.").  Without any evidence to the contrary, this appears to the Court like a back-door maneuver to revoke Petitioner's parole without providing the notice and opportunity to be heard

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 12

as required by the applicable regulations.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(e)(2)(i); 212.5(b).  Such actions clearly pose Due Process concerns.

What is more, Petitioner is currently detained without any clear statutory authority.  As discussed, in October 2025, an immigration judge dismissed Removal Proceedings 2, because "jurisdiction is still with the BIA." (Dkt. No. 11 at 4.)  Implicit in this determination is the conclusion that the July 24, 2025 initiation of Removal Proceedings 2 was improper from the beginning, because the termination of Removal Proceedings 1 was never finalized.  (*Id.*); *see also* Section III(A) *supra*.  Put more simply, Removal Proceedings 1 never should have been terminated, and Removal Proceedings 2 never should have been initiated.

This means Petitioner should still be subject to the conditions of parole imposed in Removal Proceedings 1 in June 2024, when the first NTA was issued and Petitioner was "paroled in[to the United States] for two years." (*Id.* at 2.)  But instead, Petitioner remains indefinitely detained pursuant to the terms of removal proceedings that *were never lawfully sufficient to begin with*.  (Dkt. No. 11 at 4); *see also Nguyen v. Albarran*, Case No. 1:25-cv-1926 CSK, 2026 WL 184513, at *7 (E.D. Cal. Jan. 23, 2026) (citation omitted) (granting habeas petition challenging re-detention and returning petitioner to the status quo, which is the "'last uncontested status which preceded the pending controversy[,]'" which in that case was the petitioner's release under order of supervision).  These events have erroneously deprived Petitioner of his liberty interest and the procedural protections offered in his initial grant of parole in Removal Proceedings 1.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 13

### 3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community").  Though "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude—other than their vague assertion of "changed circumstances" (Dkt. No. 11 at 2)—that Petitioner's case presented such an urgent scenario.  Nor do they explain how their interests were furthered by using a back-door procedure to detain Petitioner by terminating Removal Proceedings 1 and then attempting to subject him to expedited removal proceedings.  As this Court and others have identified, "detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025)).

In sum, the Court concludes all three *Mathews* factors favor Petitioner and that Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution.

## IV    ORDER

For the reasons set forth above, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **TWENTY-FOUR (24)** hours of this order and return him to his previous conditions of parole (i.e., the conditions imposed in Removal Proceedings 1 and the NTA issued on June 26, 2024) (Dkt. No. 1-1 at 11–14).

2. Petitioner SHALL not be re-detained without first complying with the pre-deprivation requirements identified in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i).

3. Within **TWENTY-FOUR (24)** hours of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to calendar this event and to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 17th day of April 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS - 15